# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

| | | |
|---|---|---|
| SMAL AND PARTNERS UK LTD., ET AL., | : | |
| | : | |
| | : | **Civ. No. 11-5260 (JLL)** |
| **Plaintiffs,** | : | |
| | : | |
| v. | : | |
| | : | |
| PODHURST ORSECK P.A., ET AL., | : | **REPORT AND RECOMMENDATION** |
| | : | |
| **Defendants.** | : | |

_____

**HAMMER, United States Magistrate Judge**

## I.   INTRODUCTION

This matter comes before the Court on the motion of defendants Steven C. Marks and Podhurst Orseck P.A. to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).  The Honorable Jose L. Linares, United States District Judge, referred the motion to the Undersigned for Report and Recommendation.

## II.   BACKGROUND

### A.   Factual Background

In May 2007, the Federal Customs Service of the Russian Federation filed an action against the Bank of New York Mellon in the Arbitrazh Court in Moscow.  (Compl. ¶ 8, Sept. 13, 2011, ECF No. 1.)  The Federal Customs Service allegedly retained plaintiff Smal and Partners UK Ltd., a British corporation, to prosecute this claim.  (Id. ¶¶ 3, 10, 18.)  Plaintiff Vasili Evdokimov resides in the United Kingdom (id. ¶ 4) and is, assumably, the director of plaintiff

1

Smal and Partners.[1]  Smal and Partners retained defendants Steven C. Marks and Podhurst Orseck P.A. to act as counsel in Russia for the Federal Customs Service.  (Compl. ¶ 10.)  Marks resides in Florida, and Podhurst Orseck is a Florida company with its office in Miami.  (Id. ¶¶ 6–7.)  The plaintiffs agreed with Marks and Podhurst Orseck to split fees pursuant to an agreement.  (Id. ¶ 11.)

Russia's Federal Customs Service and Bank of New York Mellon settled their dispute.  (Id. ¶ 13.)  Pursuant to this settlement, Podhurst Orseck was responsible for paying the fees and costs of other attorneys with a fee interest in the case.  (Id. ¶ 14.)  Bank of New York Mellon transferred the settlement amount to Podhurst Orseck, but Marks and Podhurst Orseck allegedly did not distribute any of this amount to Smal and Partners or Evdokimov.  (Id. ¶ 16.)

### B. Procedural Background

On September 13, 2011, plaintiffs Evdokimov and Smal and Partners filed this action against Marks, Podhurst Orseck, and Bank of New York Mellon in the United States District Court, District of New Jersey.  (See Compl. ¶¶ 5–7.)  The plaintiffs allege that Marks and Podhurst Orseck committed conversion, fraud, breach of settlement agreement, breach of fiduciary duty, breach of duty of loyalty and fair dealing, negligence, failure to safeguard property, and unjust enrichment.  (Id. ¶¶ 19–55.)

On October 28, 2011, Marks and Podhurst filed a motion to dismiss for lack of personal jurisdiction.  (Defs. Marks & Podhurst Orseck Mot. to Dismiss, Oct. 28, 2011, ECF No. 5.)  On the same day, Bank of New York Mellon filed a motion to dismiss for failure to state a claim.

---

[1] Plaintiffs' Complaint does not describe Evdokimov's relationship to Smal and Partners. The Court relies on his title as stated on a fee agreement, which is attached to the plaintiff's Brief in Opposition to the present motion.  (See Pls.' Opp'n Br. Ex. B, Nov. 7, 2011, ECF No. 10.)

(Def. Bank of NY Mellon's Mot. to Dismiss, Oct. 28, 2011, ECF Nos. 7–8.)  The plaintiffs filed

a single submission opposing both motions to dismiss.  (Pls.' Opp'n Br., Nov. 7, 2011, ECF No.

10.)  The defendants filed reply briefs. (Def. Bank of NY Mellon's Reply Br., Nov. 14, 2011,

ECF No. 11; Defs. Marks & Podhurst Orseck Reply Br., Nov. 18, 2011, ECF No. 15.)

On November 1, 2011, the Honorable Jose Linares, United States District Court Judge,

referred the motion to dismiss for lack of personal jurisdiction to the Undersigned.  On

November 29, 2011, Judge Linares granted Bank of New York Mellon's motion to dismiss with

prejudice and terminated Bank of New York Mellon from the case.  (Order, Nov. 29, 2011, ECF

No. 17.)

On February 15, the plaintiffs sought permission to file a sur-reply to present newly

discovered evidence supporting specific personal jurisdiction.  (Pls.' Letter, Feb. 15, 2012, ECF

No. 19.)  The Undersigned granted the request and set a schedule for the plaintiffs to submit their

sur-reply and for the defendants to submit a response.  (Order, Feb. 17, 2012, ECF No. 20.)  On

February 22, 2012, the plaintiffs filed a sur-reply and accompanying certification.  (Pls.' Sur-

reply Letter, Feb. 22, 2012, ECF No. 21; Borsen Certif., Feb. 22, 2012, ECF No. 22.)  On

February 29, 2012, the defendants filed their response to the sur-reply. (Defs.' Resp. to Sur-reply,

Feb. 29, 2012, ECF No. 23.)

III.    DISCUSSION

    A.    Personal Jurisdiction

Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure allows a federal district court to

"exercise[] personal jurisdiction according to the law of the state where it sits."  O'Connor v.

Sandy Lane Hotel Co., 496 F.3d 312, 316 (3d Cir. 2007); see Marten v. Godwin, 499 F.3d 290,

296 (3d Cir. 2007); see generally Smith v. S&S Dundalk Eng'g Works, Ltd., 139 F. Supp. 2d

610, 617 (D.N.J. 2001) (noting that former Rule 4(e) is now incorporated into Rule 4(k)).

Normally, this is a two-part inquiry; there must be a state statutory basis for exercising

jurisdiction over a non-resident defendant as well as a constitutional basis whereby the minimum

contacts between the non-resident and the forum state satisfy due process under the Fourteenth

Amendment.  See Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009).  New

Jersey's long-arm rule, however, extends jurisdiction over non-resident defendants to the full

extent permitted by the United States Constitution.  Carteret Sav. Bank, FA v. Shushan, 954 F.2d

141, 145 (3d Cir. 1992); see also N.J. Ct. R. 4-4(b)(1); YA Global Inv., L.P. v. Cliff, 419 N.J.

Super. 1, 8 (App. Div. 2011) (citing Avdel Corp. v. Mecure, 58 N.J. 264, 268 (1971)).

Therefore, in New Jersey, inquiry into whether personal jurisdiction exists over a non-resident

defendant concerns only questions of due process under the Constitution.  Carteret, 954 F.2d at

145.

A plaintiff has the burden of persuasion to establish that jurisdiction is proper and must

provide facts based upon competent evidence, such as affidavits.  Metcalfe, 566 F.3d at 330; see

also Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984)

(explaining that, unlike a motion for failure to state a claim, plaintiff may not rely on pleadings

alone for contests of personal jurisdiction).  A plaintiff's burden of proof depends on whether an

evidentiary hearing is held.  Metcalfe, 566 F.3d at 330–31; see also Lasala v. Marfin Popular

Bank Pub. Co., 410 F. App'x 474, 476 (3d Cir. 2011).  If a court conducts an evidentiary hearing,

a plaintiff must prove personal jurisdiction by a preponderance of the evidence.  Carteret, 954

F.2d at 142 n.1, 146; see also Lasala,410 F. App'x at 476.  If, as here, no evidentiary hearing

takes place a plaintiff need only prove a prima facie case for personal jurisdiction, and a court must accept a plaintiff's allegations as true and construe disputed facts in its favor.  O'Connor, 496 F.3d at 316 (citing Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004)); see also id. at 323 (stating that "[w]e accept [plaintiff's jurisdictional] statement as true because the District Court held no evidentiary hearing); Lasala, 410 F. App'x at 476–77.[2]

Personal jurisdiction may be exercised under two distinct theories: general jurisdiction or specific jurisdiction.  O'Connor, 496 F.3d at 317.

Here, the plaintiffs do not assert that general personal jurisdiction exists.  (Pls.' Opp'n Br. at 6 ("Plaintiffs do not suggest that Defendants are subject to general jurisdiction in New Jersey; however, given Podhurst Orseck's underlying contacts arise from Arthur Ballen's forum contacts, specific jurisdiction may be asserted.").)  Accordingly, the Undersigned will consider only whether specific personal jurisdiction exists over Marks and Podhurst Orseck.[3]

---

[2] Where a plaintiff makes a prima facie case, however, a court may revisit disputed facts at a later time and a plaintiff must eventually prove jurisdictional facts by a preponderance of the evidence.  Metcalfe, 566 F.3d at 331, 336 (citing Carteret, 954 F.2d at 142 n.1, 146); see also LaRose v. Sponco Mfg., Inc., 712 F. Supp. 455, 458–59 (D.N.J. 1989) (stating "[t]hus, if plaintiff meets the prima facie burden, he may proceed to trial, and may only be challenged to establish jurisdiction again at a pre-trial hearing where the burden is then raised to a preponderance of the evidence standard, such as on a motion for summary judgment, or at trial where the higher burden also attaches, but no other preliminary motions on the papers can re-visit the jurisdiction issue").

[3] General personal jurisdiction exists when the evidence shows that a defendant's contacts with the forum, whether or not related to the litigation, are "continuous and systematic." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984); accord Metcalfe, 566 F.3d at 334.  For general personal jurisdiction, a court considers, among other facts, whether a defendant's personnel or facilities are located in the forum state and whether a defendant advertised or solicited business there.  See BP Chems. Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 262 (3d Cir. 2000).  If continuous and systematic contacts with the forum state are shown, then personal jurisdiction is proper even if the cause of action arises from non-forum contacts.  Metcalfe, 566 F.3d at 334; BP Chems., 229 F.3d at 262.

Specific personal jurisdiction exists when the relationship among the forum, the defendant, and the cause of action are such that the defendant purposely avails itself of the forum's laws, the cause of action is related to or arises out of the defendant's contacts with the forum, and the defendant "should reasonably anticipate being haled into court there." Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1221–22 (3d Cir. 1992) (internal citations and quotations omitted). In the Third Circuit, a three-part inquiry determines whether specific personal jurisdiction exists:

> First, the defendant must have purposefully directed his activities at the forum. Second, the plaintiff's claim must arise out of or relate to at least one of those specific activities. Third, courts may consider additional factors to ensure that the assertion of jurisdiction otherwise comports with fair play and substantial justice.

Marten, 499 F.3d at 296 (internal quotations marks and citations omitted); accord O'Connor, 496 F.3d at 317. Furthermore, in intentional tort cases, courts consider whether the application of Calder v. Jones, 465 U.S. 783 (1984), "enhanc[es] otherwise insufficient contacts" such that minimum contacts can be established under the first two prongs of the traditional test. IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259–60 (3d Cir. 1998) (considering whether Calder can "change the outcome" of a minimum contacts analysis).[4]

Generally, a court analyzes specific personal jurisdiction on a defendant-by-defendant and claim-by-claim basis. Miller, 384 F.3d at 95 n.1 (citing Calder, 465 U.S. at 790); see also

---

[4] As the Court of Appeals for the Third Circuit stated, "[t]he effects test and traditional specific jurisdiction analysis are different, but they are cut from the same cloth." Marten, 499 F.3d at 297. Courts have used one, the other, or both tests to analyze a defendant's contacts. See Marten, 499 F.3d at 296–97 (not considering traditional test because defendants only argued Calder); Miller, 384 F.3d at 96 n.2 (not considering Calder because specific jurisdiction existed under traditional test); Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 454–55 & n.6 (3d Cir. 2003) (considering both Calder and traditional test); IMO Indus., 155 F.3d at 259–60 & n.3 (same); Carteret, 954 F.2d at 147–48 (substantially only considering traditional test).

Marten, 499 F.3d at 296 (noting that claim-by-claim analysis occurs because specific jurisdiction depends on the relationship between the claims and contacts); Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001) (noting that a court may have personal jurisdiction over a particular defendant for some claims but not others)  Certain situations, however, may allow a court to assess defendants together, assess claims together, or both.  See, e.g., Carteret, 954 F.2d at 145 n.6 (evaluating defendants together because they are liable to each other through their partnership); O'Connor, 496 F.3d at 318 n.3 (evaluating claims together because of factual overlap and one claim was derivative of another); Miller, 384 F.3d at 97–100 (evaluating defendants and related claims together); see also Remick, 238 F.3d at 255–56 (noting that it may not be necessary to do a claim-by-claim analysis in every multiple-claim case).

Under the first step of the inquiry, a defendant must "purposefully avail[] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws."  Hanson v. Denckla, 357 U.S. 235, 253 (1958); accord O'Connor, 496 F.3d at 317.  Although "[p]hysical entrance is not required, . . . . what is necessary is a deliberate targeting of the forum."  O'Connor, 496 F.3d at 317.  Accordingly, "the 'unilateral activity of those who claim some relationship with a nonresident defendant' is insufficient."  Id. (quoting Hanson, 357 U.S. at 253); see also Osteotech, Inc. v. GenSci Regeneration Scis., Inc., 6 F. Supp. 2d 349, 353 (D.N.J. 1998) (stating that "[a] single, unsolicited contact, random or fortuitous acts or the unilateral acts of others (including the plaintiff) do not constitute a purposeful connection between the defendant and the forum state").  A single act, however, can support jurisdiction if that contact creates a substantial connection with the forum and is connected with the injury sued upon.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 n.18 (1985).  Telephone calls, mail,

7

or electronic communications sent by a defendant into the forum may also count toward minimum contacts that support jurisdiction, see Grand Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993), but they do not trigger personal jurisdiction unless they show purposeful availment.  Toys "R" Us, 318 F.3d at 455.  Moreover, "contacts with a state's citizens that take place outside the state are not purposeful contacts with the state itself." O'Connor, 496 F.3d at 317.

Under the second step of the inquiry, plaintiff's "claims must also 'arise out of or relate to' at least one" purposefully directed contact.  O'Connor, 496 F.3d at 318 (quoting Helicopteros, 466 U.S. at 414).  Except for contract cases,[5] the Court of Appeals for the Third Circuit has not adopted a definitive approach to this step and has avoided "categorical determinations."

---

[5] For breach of contract claims, courts "must consider the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing."  Remick, 238 F.3d at 256; accord O'Connor, 496 F.3d at 320.  Specifically, "[i]n contract cases, courts should inquire whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach."  Id. at 320 (quoting Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001).  Physical presence in the forum can constitute purposeful availment and as such "[a]ctual presence during pre-contractual negotiations, performance, and resolution of post-contract difficulties is generally factored into the jurisdictional determination."  Gen. Elec., 270 F.3d at 150; see also Telcordia Tech. Inc. v. Telkoon SA Ltd., 458 F.3d 172, 177 (3d. Cir. 2006).  Physical presence, however, is no longer determinative, given modern commercial arrangements employing mail and wire communications, and becomes less determinative where the parties have established a long-term relationship.  Telcordia, 458 F.3d at 177.  Moreover, who initiated the relationship is not significant "[i]n the commercial milieu"; rather "the intention to establish a common venture extending over a substantial period of time is a more important consideration."  Gen. Elec., 270 F.3d at 151.  Accordingly, personal jurisdiction does not arise merely where there is a contract and "informational communications."  See Remick, 238 F.3d at 256.  But personal jurisdiction can arise where the non-resident defendant used mail and telephone communications to initiate the business relationship leading up to the contract, knew that the plaintiff-resident would perform contracted services in the form, sent payments to the plaintiff-resident, and engaged in extensive post-contract communications with the plaintiff.  See Remick, 238 F.3d at 256–257 (also noting that agreement indicated purposeful availment by suggesting that parties were protected by the law of the forum).

O'Connor, 496 F.3d at 320.  For a purposefully-directed contact to arise out of or relate to a

claim, the contact must not only be a but-for cause of the claim but must also be "a closer and

more direct causal connection" such that "[w]ith each purposeful contact by an out-of-state

resident, the forum state's laws will extend certain benefits and impose certain obligations."  Id.

at 323.  The relatedness requirement "must keep the jurisdictional exposure that results from a

contact closely tailored to that contact's accompanying substantive obligations."  Id.

Under the third step of the specific personal jurisdiction inquiry, a court must "consider

whether the exercise of jurisdiction would otherwise comport with 'traditional notions of fair

play and substantial justice.'"  O'Connor, 496 F.3d at 324 (quoting Int'l Shoe Co. v. Washington,

326 U.S. 310, 316 (1945)).  Specifically, "[t]he existence of minimum contacts makes

jurisdiction presumptively constitutional, and the defendant 'must present a compelling case that

the presence of some other considerations would render jurisdiction unreasonable.'"  O'Connor,

496 F.3d at 324 (citing Burger King, 471 U.S. at 477).  This is a heavy burden for the defendant

to show.  Grand Entm't Grp., 988 F.2d at 483.  When considering jurisdictional reasonableness, a

court considers several factors, including: (1) the burden on the defendant, (2) the plaintiff's

interest in convenient and effective relief, (3) the forum's interest in adjudicating the dispute, (4)

the interstate or international judicial system's interest in obtaining an efficient resolution, and

(5) the procedural and substantive interests of other countries.  O'Connor, 496 F.3d at 324

(internal citations omitted).

Even if minimum contacts do not exist under the traditional test, the Court considers

whether the so-called Calder effects test "can change the outcome."  IMO Indus., 155 F.3d at

259–60.  Under the effects test, "an intentional tort directed at the plaintiff and having sufficient

impact upon it in the forum may suffice to enhance otherwise insufficient contacts with the forum such that the 'minimum contacts' prong of the Due Process test is satisfied." Id. at 260. To establish minimum contacts under the Calder effects test in the Third Circuit, a plaintiff must show that:

> (1) The defendant committed an intentional tort;
> (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; [and]
> (3) The defendant expressly aimed its tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

Marten, 499 F.3d at 297 (citing IMO Indus., 155 F.3d at 265–66).

Under the "brunt of the harm" element, the Court of Appeals for the Third Circuit has found that "the mere allegation that the plaintiff feels the effect of the defendant's tortious conduct in the forum because the plaintiff is located there is insufficient to satisfy Calder." IMO Indus., 155 F.3d at 263 (agreeing with ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617 (4th Cir. 1997); Far West Capital, Inc. v. Towne, 46 F.3d 1071 (10th Cir. 1995); Southmark Corp. v. Life Investors, Inc., 851 F.2d 763 (5th Cir. 1988)).

Under the "expressly aimed" element, "the plaintiff has to demonstrate '[that] the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum.'" Marten, 499 F.3d at 298 (quoting IMO Indus., 155 F.3d at 266). However, "[i]f a plaintiff fails to show that the defendant manifested behavior intentionally targeted at and focused on the forum, the plaintiff fails to establish jurisdiction under the effects test." Marten, 499 F.3d at 298 (internal citations and quotations omitted). For

example, "[s]imply asserting that the defendant knew that the plaintiff's principal place of business was located in the forum would be insufficient in itself to meet this requirement."  IMO Indus., 155 F.3d at 265.

### B.    Analysis

The Court will consider defendant Marks and Podhurst Orseck's contacts together because of the relationship between the two defendants (Mark is the director of Podhurst Orseck), and because there is a complete factual overlap of the claims asserted against them. See, e.g., O'Connor, 496 F.3d at 318 n.3 (evaluating claims together because of factual overlap and one claim was derivative of another).  The Court will first consider the plaintiffs original motion and then the supplemental evidence offered in the plaintiffs' sur-reply.

As noted above, plaintiffs Smal and Partners and Mr. Evdokimov have the burden of persuasion to establish that personal jurisdiction exists and must persuade the Court with facts based upon competent evidence.  Metcalfe, 566 F.3d at 330.  The plaintiffs may not solely rely on their pleadings.  Time Share, 735 F.2d at 66 n.9 (explaining that, unlike a motion for failure to state a claim, plaintiff may not rely on pleadings alone for contests of personal jurisdiction).

The plaintiffs originally asserted that specific jurisdiction exists because of a single contact.  They asserted that Marks and Podhurst Orseck partnered with New Jersey counsel, Arthur Ballen, in the underlying Russian litigation between Bank of New York Mellon and Russia's Federal Customs Service.  (Pls.' Opp'n Br. at 2, 4–6.)  To support this assertion, the plaintiffs offered only the first page of a multi-page letter dated August 29, 2011, from an Arthur Ballen in New Jersey to a "Dear Sir."  (See Pls.' Br. Ex. E.)  The plaintiffs' assertion was based solely on these two sentences: "We were quite surprised that you were involved in the Customs

Services case against the Bank of New York.  Our partner in this venture is the law firm of Podhurst Orseck and we deal with the head of litigation, Steven Marks, Esquire."  (Id.; see also Pl.'s Br. at 4.)  Notably, the plaintiffs failed to give any context regarding this letter.  It left the Court to wonder who "you" referred to, what Ballen meant by "this venture," and how the underlying Russian litigation and "this venture" could be the same thing when the former is referred to in the past and the latter the present.

A review of even the single page submitted to the Court facially demonstrates that it does not show what the plaintiffs purported.  As to whom it was addressed, the letter elsewhere stated: "We understand we have to wait for your senior partner Mr. Maxim Smal to return."  (See Pls.' Br. Ex. E.)  Apparently, Mr. Ballen was addressing plaintiff Smal and Partners' managing partner.  (See Pls.' Br. Ex. D (letter signed by Maxim Smal "Managing Partner" of Smal and Partners).  The letter concerned Ballen's "inquiry reference" to Smal and Partners regarding cases in Russia.[6]  As the Undersigned reads on, it is apparent that an incident occurred involving a plane operated by Rusair, which apparently was owned by an American company.  (Id.)  Ballen sought a Russian law firm to contact families of passengers on that plane so that he might represent them in an action against Rusair in the United States.  (Id.)  This appears to be the "venture" to which Ballen referred.  This is all the more clear when Ballen reiterated, "[a]s stated above, Podhurst Orseck is our partner in this case against Rusair."  (Id.)  As for the litigation between Bank of New York Mellon and Russia's Federal Customs Service, Ballen's words meant just what he wrote.  He expressed "surprise" that the plaintiffs were involved in that case

---

[6] The letter referred to "obtaining cases in Petrozavodsk" (id.), and the Court takes judicial notice that this is a city in the Russian Federation.

because, as the letter went on to state: "you [the plaintiffs], recall it was Mr. Marks who brought

suit on behalf of the Customs Services of Russia against the Bank of New York.  Mr. Marks

settled that case for a very large figure."  (Id.)  This statement does not show that Ballen

partnered with Marks at all in the underlying action.  Rather, it shows the complete opposite:

Marks and Podhurst Orseck partnered with a New Jersey firm in the Rusair action and not the

Federal Customs Service/Bank of New York Mellon action.[7]  The Undersigned need not even

consider the defendants' responding affidavits, although these affidavits confirm what is readily

apparent from the plain language of Ballen's letter.  (See Marks Supplemental Aff., Nov. 18,

2011, ECF No. 15; Ballen Aff., Nov. 18, 2011, ECF No. 15.)  The purported Ballen/Marks

partnership was the only thread by which the plaintiffs originally tied Marks and Podhurst to

New Jersey.  As this thread has been cut, the Undersigned finds that no personal jurisdiction

exists over Marks and Podhurst because of the purported Ballen/Marks partnership in this case.

   Even if the Undersigned took as true the plaintiffs' assertion that Ballen partnered with

Marks and Podhurst Orseck in this case, there would still be a fatal problem to the assertion of

specific personal jurisdiction.  For personal jurisdiction to exist, there must be a relationship

among the forum, the defendant, and the cause of action such that the defendant "should

reasonably anticipate being haled into court there."  Mellon Bank, 960 F.2d at 1221–22.  But

these defendants are from Florida, the plaintiffs are from Britain, and the fee agreement that

spawned this litigation does not facially concern New Jersey.  Indeed, the fee agreement's header

reads: "United Kingdom of Great Britain and Northern Ireland."  (See Defs. Br., Ex. B.)

---

[7] Indeed, rather than show that Ballen partnered with Marks or Podhurst Orseck, Ballen's perception contradicts the plaintiffs' contention that they ever worked with Marks.

Conspicuously absent is any connection to New Jersey.  Moreover, not just any connection to New Jersey is sufficient; the contact must be connected to the injury sued upon.  See O'Connor, 496 F.3d at 318.  Marks and Podhurst could not reasonably anticipate being haled into New Jersey for partnering with New Jersey counsel, given that the causes of action stem from an alleged breach of a contract negotiated between British and Floridian residents and performed in Russia.

Stated otherwise, no specific personal jurisdiction exists over Marks and Podhurst Orseck because the plaintiffs fail to describe how any partnership with Ballen "arises out of" the plaintiffs' claims.  O'Connor, 496 F.3d at 318.  For example, to the extent that the plaintiffs asserts claims based in contract, there is nothing about this alleged partnership that indicates that "the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach."  Gen. Elec., 270 F.3d at 150.  As for tort claims, a contact must not only be a but-for cause of the claim, but must also be "a closer and more direct causal connection" such that "[w]ith each purposeful contact by an out-of-state resident, the forum state's laws will extend certain benefits and impose certain obligations."  O'Connor, 496 F.3d at 323.  The plaintiffs have failed to demonstrate either that the alleged Ballen contact has a but-for relationship to their claims, or that this contact created jurisdictional exposure in New Jersey in a fee dispute between British and Floridian residents.  See id.  ("The relatedness requirement[] . . . must keep the jurisdictional exposure that results from a contact closely tailored to that contact's accompanying substantive obligations.").  Calder's effects test is also inapplicable because, for example, the plaintiff cannot show that Marks and Podhurst Orseck manifested behavior intentionally targeted at and focused on New Jersey.  See Marten, 499 F.3d at 298.  Indeed, all the facts are to the

14

contrary: British plaintiffs hired Floridian lawyers to prosecute a case on behalf of a Russian

client in Moscow.  Lastly, the fact that former defendant New York Mellon (now dismissed from

the case) is a New Jersey corporation is of little help since "contact with a state's citizens that

take place outside the state are not purposeful contacts with the state itself."  O'Connor, 496 F.3d

at 317.  A violation of the fee agreement between the British plaintiffs and the Floridian

defendants is, at best, incidentally related to New Jersey.

### 1.        The Plaintiff's Sur-reply

The plaintiffs' sur-reply presented additional evidence that purportedly "extends

Defendants' minimum contacts with the State of New Jersey" and demonstrates "specific

personal jurisdiction over the Marks defendants."  (Pls.' Letter at 2, Feb. 15, 2012, ECF No. 19.)

The plaintiffs presented four pieces of additional evidence.  (See Pls.' Sur-reply Letter, Feb. 22,

2012, ECF No. 21; Borsen Certif., Feb. 22, 2012, ECF No. 22.)  First, defendant Marks is on a

2005 list of attorneys ineligible for admission pro hac vice in New Jersey state court.  (Pls.' Sur-

reply Letter at 2; Borsen Certif. Ex. A.)  Second, a 2010 magazine article reported that Marks

filed products liability claims "at the same time in Barcelona and New Jersey, banking on getting

a jurisdiction transfer to Spain."  (Pls.' Sur-reply Letter at 3; Borsen Certif. Ex. B.)  Third, the

plaintiffs argue that the defendants advertised to New Jersey residents because Podhurst Orseck's

website contains a world map labeled "Aviation Experience" with numbered geographical

pinpoints, one of which is on New Jersey.  (Pls.' Sur-reply Letter at 3; Borsen Certif. Ex. C.)

Fourth, the plaintiffs argue that Marks "has serv[ed]" New Jersey residents because a 2007 article

stated that Marks filed a law suit naming a New Jersey-based company as a defendant.  (Pls.'

Sur-reply Letter at 3, Borsen Certif. Ex. D; see also Pls.' Letter at 2, Feb. 15, 2012.)

The plaintiffs' sur-reply does not establish personal jurisdiction.  The asserted contacts continue to miss a key element of specific personal jurisdiction: the contacts have nothing to do with the injury sued upon.  See O'Connor, 496 F.3d at 318–24.  The plaintiffs fail to connect how pro hac vice admissions, periodical articles about other lawsuits, or purported advertising in New Jersey "arises out of" the plaintiffs claims, as required by specific personal jurisdiction.  See id.; see also Remick, 238 F. 3d at 259 n.3 (stating that "the mere posting of information or advertisements on an Internet website does not confer nationwide personal jurisdiction")

Accordingly, the Undersigned recommends that the Court dismiss the Complaint for lack of personal jurisdiction.[8]

## IV.   CONCLUSION

For the reasons above, the Undersigned recommends that defendants' motion [ECF No. 5] be granted and this matter be dismissed for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

The parties have fourteen days to file and serve objections to this Report and Recommendation pursuant to 28 U.S.C. § 636 and L. Civ. R. 71.1(c)(2).

*s/Michael A. Hammer*
United States Magistrate Judge


Date: March 2, 2012.

------

[8] Defendants moved, in the alternative, to transfer this action to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1404.  Having recommended dismissal of this action pursuant to Fed. R. Civ. P. 12(b)(2), the Undersigned need not reach Defendants' motion to transfer.